JONES *v.* GRIFFIN.

(Division A. Feb. 10, 1930. Suggestion of error overruled June, 9, 1930.)

[126 So. 35. No. 28239.]

Luther **A.** Whittington, of Natchez, for appellant.

258

D. C. Bramlette, of Woodville, for appellee.

**Engle & Laub**, of Natchez, for appellee.

Argued orally by **L. A. Whittington**, for appellant and by **S. B. Laub** and **D. C. Bramlette**, for appellee.

**Smith, C. J.**, delivered the opinion of the court.

This is an appeal from a judgment for damages alleged to have been sustained by the appellee because of the alleged breach of a contract by the appellant. The declaration alleges:

"That the plaintiff entered into a contract with the said J. M. Jones, who is doing business under the name of J. M. Jones Lumber Company, by which there was contracted to plaintiff at the price of ten ($10) dollars per thousand to be paid by the said J. M. Jones the work of cutting and logging all merchantable timber on certain lands in Wilkinson county, Mississippi, purchased by said J. M. Jones from Homochitto Development Company, the said tract containing about seventy-nine hundred (7,900) acres, and the said timber being estimated at about fifteen million (15,000,000) feet, and the said plaintiff was to have furnished to him by the said defendant bolts and spikes and all necessary railroad tools, cars and equipment, together with engine, loader and steel angle bars, and the said plaintiff was to build a railroad track for the getting out of the timber on said lands and was to receive ten ($10) dollars per thousand for all logs delivered at Black Hill landing on the Mississippi river in Adams county, Mississippi, and the said J. M. Jones, defendant, was to furnish all necessary money for the construction of said railroad track and bridges and to be entitled to hold out two ($2) dollars per thousand feet on logs delivered at said Black Hill landing until the construction account was paid out, and the said J. M. Jones was to deliver all railroad equipment in first class condition at said Black Hill landing and the same was to be returned by plaintiff in good condition, wear and tear excepted. The said plaintiff started to work under said contract to build a railroad through the timber of the defendant and to cut and log said timber, and the said de-

fendant commenced to furnish money for construction of said railroad to the plaintiff, and after the plaintiff had been at work on said contract for a considerable time and had built a considerable portion of the railroad and a number of bridges, the said defendant agreed not to deduct the two ($2) dollars per thousand until the said plaintiff in his railroad building had crossed what is known as East Prong of Homochitto river which was done about the 5th day of February, 1928.''

The declaration then alleges in substance that, after the plaintiff had constructed the greater part of the railroad necessary to enable him to transport the timber to the Mississippi river, the defendant declined to further comply with his contract to furnish money with which to construct the remainder of the railroad, and refused to permit the plaintiff to continue with the performance of the contract; that the defendant would have made a profit of forty-eight thousand dollars, had he been permitted to perform his contract, and in addition he was compelled to spend a considerable sum of money on the railroad equipment furnished him by the plaintiff, because of its defective condition; that he owed the defendant about seventeen thousand dollars, which should be deducted from the aggregate of the two foregoing items of damages, leaving a net damage to the plaintiff of thirty-six thousand dollars, for which he asked judgment.

The land on which this timber is situated begins about two miles from the Mississippi river and extends back several miles further. It is traversed by the Homochitto river, which enters the Mississippi river by two branches, or prongs, forming a delta, the first of which is about two miles from the Mississippi river at the point where the railroad enters the land, and the other is several miles distant from that point.

By several pleas the appellant denied liability, and alleged that his agreement to advance the money with which to build the railroad was only for that portion from the Mississippi river to and across the first prong of the Homochitto river, not to exceed one thousand five

hundred dollars per mile, exclusive of bridges, for which he was to advance in addition not more than one thousand five hundred dollars with which agreement he complied. He also filed an itemized sworn statement of the appellee's account with him, showing a balance due thereon of sixteen thousand seven hundred fifty-two dollars and seventy-two cents, and asked for a judgment over therefor. At the close of the evidence the appellee requested, but was denied, an instruction directing the jury to return a verdict in his favor.

Under the contract as set forth in the declaration the appellant was obligated to furnish the money for the building of whatever railroad facilities were necessary "for the getting out of the timber." The evidence was in conflict as to whether this was the contract, or whether the contract was as set out in the appellant's plea, which conflict, of course, presented a question for the determination of the jury.

The appellant advanced the appellee money with which to construct the railroad from the Mississippi river to and across the first prong of the Homochitto river, and continued thereafter to advance him money until all but about two miles of the railroad necessary for getting the timber out had been constructed. A part of the money furnished the appellee by the appellant was used by him for purposes other than the construction of the railroad, but no separate account thereof was kept by either party, the appellant stating there was no necessity therefor, and, according to the appellee, that he would finance the appellee through the completion of the contract. The appellee's indebtedness to the appellant, when the railroad had been constructed to or near the second prong of the Homochitto river, was approximately seventeen thousand dollars. The appellant, being of the opinion that he could not continue to furnish the appellee money without losing a considerable sum in the end, declined to continue further so to do, and told the appellee that he would have to obtain the money from other sources; this the appellee declined to do, and insisted on a compliance

by the appellant with his contract to furnish the money with which to complete the railroad. The appellant then notified the appellee that he had canceled the contract, took over the railroad, and made other arrangements for the cutting and logging of the timber. While no distinction was made in the account which the appellant kept of the money furnished the appellee between that furnished for the construction of the railroad and for other purposes, both parties seemed to consider the balance due as representing the amount spent by the appellant in constructing the railroad, and the appellee specifically stated in his evidence that he only desired the appellant to furnish the money for the construction of the railroad. The appellant in declining to continue to furnish money to the appellee made no distinction in this regard, declining to furnish him any money whatever. If the appellee's version of the contract was correct, which question was for the determination of the jury, the contract was broken by the appellant.

The appellant was refused the following instruction: "The court instructs the jury for the defendant that they must find in this case that the plaintiff owed the defendant the amount of the account filed herein and sworn to by the defendant, being the sum of sixteen thousand eight hundred seventy-two dollars and two cents, less any credits which the jury may believe from the evidence has been shown to be due the plaintiff by the defendant."

The instruction is defective in two respects: First, the sworn statement of the account filed by the appellee showed a balance due him, not of sixteen thousand eight hundred seventy-two dollars and two cents, but of sixteen thousand seven hundred fifty-two dollars and seventy-two cents. The former amount was probably taken from the evidence of one of the appellant's witnesses who testified that that was the balance due; and, second, it does not advise the jury what application to make of the amount due the appellant by the appellee. But in any event the refusal of the instruction did the appellant no harm. The appellee's declaration admitted an indebted-

ness due the appellant of seventeen thousand dollars, and asked for a judgment only for the difference between that amount and the amount of damages he claimed to have sustained because of the breach of the contract by the appellant. In his evidence the appellee repeatedly admitted that he owed the appellant that amount, and the jury could not have but understood that that amount was to be deducted from whatever damage the breach of the contract had inflicted on the appellee.

The measure of the appellee's damages for the breach of this contract is the difference between what he was to receive for the timber and what it would have cost him, to cut and deliver it. He stated, over the appellant's objection, that this expense would be six dollars per thousand feet. He was then asked by his counsel how he arrived at that amount, and stated in detail on what he based his estimate. He had the right to say, if he knew, what the expense of cutting and delivering the timber would be; but, of course, if it appeared from further examination that his estimate of the expense rested on no substantial basis, it should be excluded from the evidence on proper application therefor. There was considerable other evidence from which the jury could have arrived at the approximate cost to the appellee of cutting and delivering the timber. One witness testified that it would be seven or seven dollars and fifty cents per thousand feet. The jury did not accept the appellee's estimate of this expense, for, had they, the damages awarded him, after deducting the seventeen thousand dollars therefrom, would have considerably exceeded the amount of their verdict. The evidence, therefore, if inadmissible, which we do not hold, would have been harmless.

The record contains no reversible error, if error at all. Affirmed.