GARRETT *v.* WALKER, et al.

No. 41551        January 16, 1961        126 So. 2d 237

*Roland C. Brown*, Laurel, for appellant.

*McFarland & McFarland*, Bay Springs, for appellees.

KYLE, J.

This suit was instituted by the appellant, Ethridge Garrett, as plaintiff, in the Circuit Court of the First Judicial District of Jasper County, against D. P. Walker and his wife, Bonnie Walker, and the First Federal Savings and Loan Association, a corporation of Hattiesburg,

Mississippi, defendants, for the recovery of a money judgment for the unpaid balance alleged to be due the appellant under a contract for the construction of a gasoline service station and the repair and remodeling of other buildings for the defendant D. P. Walker on a tract of land owned by the said defendant and situated in Jasper County, and for the establishment of a lien on said property to secure the payment of said unpaid balance.

The plaintiff alleged in his declaration that prior to or during the month of January 1953 the plaintiff entered into a contract with the defendant D. P. Walker to construct for the defendant a gasoline service station and to repair and remodel a cafe and other buildings on the above mentioned tract of land; that under the terms of said contract the plaintiff agreed to furnish all of the materials and labor required in the construction of said service station and the repair and remodeling of said cafe and other buildings, and in consideration thereof the defendant D. P. Walker promised and agreed to pay to the plaintiff the actual cost of all materials and labor and a contractor's commission of ten per cent of the total cost of such materials and labor; and that said contract was made with the full knowledge and consent of the defendant Mrs. Bonnie Walker. The plaintiff further alleged in his declaration that, in accordance with the provisions of the above mentioned contract, the plaintiff constructed said service station and remodeled and repaired said cafe and other buildings and furnished all of the materials and labor used in said construction and repair work and completed the same sometime during the month of September 1953; that the total cost of said materials and labor amounted to $10,123.98, and the contractor's commission thereon amounted to $1,012.39; that the defendant D. P. Walker had paid to the plaintiff the sum of $5,497.73 on account of the above mentioned contract; and that the said defendant was still indebted to the plaintiffs on account

of said contract in the sum of $5,638.64, which he had wholly failed and refused to pay. The plaintiff attached to his bill of complaint an itemized statement or bill of particulars covering the materials and labor furnished by him in executing said contract, the costs thereof and the amounts still due and owing therefor, same being represented by Exhibits 1 to 15, inclusive, attached to the bill of complaint. The plaintiff further alleged that by virtue of the aforesaid contract the plaintiff had a lien on the above mentioned buildings and the land on which said buildings were located to secure the said unpaid balance of $5,638.64 due on said contract.

The plaintiff further alleged in his declaration that the First Federal Savings and Loan Association of Hattiesburg, Mississippi, was the holder of a deed of trust on the above mentioned land, which said deed of trust was executed by the defendants, D. P. Walker and Mrs. Bonnie Walker, on July 18, 1953, to secure a loan of $12,000 made by said Savings and Loan Association to the said D. P. Walker and his wife for the purpose of enabling them to construct said service station and to repair and remodel the other buildings; and that said First Federal Savings and Loan Association had full knowledge that the construction work was being done. The plaintiff therefore prayed that a lien against the above described property be adjudged to exist in favor of the plaintiff to secure the balance of the indebtedness due and owing to him, and that a judgment be rendered in his favor against the defendant, D. P. Walker, for the said sum of $5,638.64, and that the property be sold to satisfy said judgment.

The plaintiff later filed an amendment to his declaration in which he alleged that the First Federal Savings and Loan Association failed to take the necessary precautions to see that the money loaned to the Walkers would be used by them to pay for the materials and labor furnished by the plaintiff; that at the time the money was advanced to the Walkers the said Savings

and Loan Association had actual notice of the plaintiff's lien; and that the plaintiff's lien was therefore a first lien on said property superior to the deed of trust lien held by the Savings and Loan Association.

The defendants, D. P. Walker and his wife, filed their answer to the plaintiff's declaration at the February 1954 term of the court, and in their answer the defendants admitted that a contract was entered into with the plaintiff in January 1953 for the construction of a service station and for the repair and remodeling of a cafe; but the defendants denied that the contract was a cost-plus contract, as alleged in the plaintiff's declaration, whereby the defendants were to pay the actual cost of the materials and labor and to pay to the plaintiff ten per cent thereof as a commission. The defendants alleged that the truth about the contract was that the contract was made and entered into between the parties for a stipulated sum of $8,890 for a completed job; that the plaintiff, acting pursuant to the said contract, submitted to the First Federal Savings and Loan Association a bid on the job for said sum of $8,890; and that the said Savings and Loan Association, acting on said bid, loaned to the defendants the sum of $12,000 to be used by the defendants in the payment of the construction cost of the buildings and the purchase price of the property; that the contract entered into between the plaintiff and the defendants was a firm offer and acceptance and a binding contract whereby the plaintiff agreed to construct said buildings according to blue prints, plans and specifications; and that said contract was for a completed job with plaintiff furnishing all materials and labor therefor. The defendants admitted that they had paid to the plaintiff directly only $5,497.73 of the stipulated sum of $8,890; but the defendants averred in their answer that, in addition to the amounts paid directly to the plaintiff, the defendants had paid to other persons and firms, for work done and for materials and supplies furnished for said job, other sums of money amounting

to $3,420.97, said payments being listed as follows: To City Electric Company of Laurel the sum of $2,130 for the wiring of said buildings, and furnishing materials; to C. P. Clark the sum of $562 for plumbing fixtures and supplies; to Sanitary Pottery Company the sum of $260 for materials purchased; and to Gatlin Lumber Company the sum of $468 for lumber; all of said payments having been made at the instance and request of the plaintiff for materials furnished and labor performed in the construction of said buildings as a part of the plaintiff's contract; and the defendants averred in their answer that they were not indebted to the plaintiff in the amount of $5,638.64 or in any amount whatsoever.

The defendant First Federal Savings and Loan Association filed a separate answer, and in its answer averred that it was the holder of a deed of trust on the above mentioned property, which said deed of trust had been given by the said Walkers to secure a loan in the sum of $12,000 made to them by said Savings and Loan Association for the purpose of enabling said Walkers to construct said service station and to repair and remodel the other buildings and structures; and that the proceeds of said loan were paid to the Walker defendants to be used by them in the payment of labor and materials used in the construction and repair of said buildings; and the said Savings and Loan Association denied that the plaintiff had a first lien on said property superior to its mortgage deed of trust.

Thereafter, on June 2, 1954, the Laurel Brick Works, the Carter Building and Supply Company, Inc., and J. W. (Bill) Hoss and the Derrick Sheet Metal Works and W. C. Mullican filed petitions for intervention as materialmen, and asked to be allowed to intervene and to assert their claims for a lien upon the buildings and premises, under authority of Sections 356 and 372, of the Mississippi Code of 1942, the amounts claimed to be due them, respectively, for labor and materials aggregating the sum of approximately $3,061.

The record shows that the case was continued on the docket of the Circuit Court from term to term at the instance of one or another of the parties or by agreement, until the August 1959 term of the court, when the case was called for trial. It was then stipulated by the Laurel Brick Works and the other petitioners referred to above as intervenors, and by counsel for the plaintiff and counsel for the defendants, that the accounts filed by the above mentioned intervenors were correct as stated; that the materials listed on said accounts were delivered to and used in the construction of the above mentioned gasoline service station and the repair and remodeling of the other buildings owned by the Walker defendants; and that the lien, if any, in favor of said intervenors, depended upon the contractual relation existing between the plaintiff and the Walker defendants and upon the plaintiff prevailing in this action.

Ethridge Garrett, the plaintiff, was called to testify as a witness in his own behalf. Garrett stated that he lived at Laurel and was a general contractor engaged in the construction of residential and commercial buildings; that he had known the defendant D. P. Walker about ten years; and that he had done construction work for Mr. Walker prior to 1953. Garrett stated that he did a considerable amount of work for Mr. Walker during the year 1953 at Walker's Truck Stop in Jasper County. His agreement with Mr. Walker was that he was to do the work on a cost-plus-a-percentage basis, and that he was to be paid for the job when it was completed. He was to furnish all labor and materials required for the job to be done, and he was to be paid the actual cost of the labor and materials plus a ten per cent commission for supervision. The ten per cent commission took care of social security and insurance. Garrett stated that, beginning in January, he jacked up the old cafe building owned by Walker and put in a new foundation. He reworked some of the inside of the building and

he constructed a patio on the front of the building. The work was carried as far as Mr. Walker wished to carry it at that time, and the work was "stopped off" there. The cost of that work was $750, and Walker paid him $400 of that amount.

Garrett stated that the next work that he did for Mr. Walker was to remodel the cafe building and add a room on the back of the building. His understanding with Mr. Walker about that work was that he was to do the job on a cost-plus-a-percentage basis, which was the only kind of agreement he ever had with Mr. Walker. Garrett stated that after he had reworked a portion of the cafe building, Mr. Walker wanted him to build a gasoline service station, and Mr. Walker requested that he give him a written proposal or an estimate so he could borrow money to build the service station, which he did. Garrett stated that he then went back and reworked the cafe building and did some work on a small tourist cabin. While that work was being done he started the work on the service station. Garrett stated that he furnished the labor and building materials for all of the work that was done on the cafe building, the service station and other buildings. Garrett was asked what the proposal was which he gave to Mr. Walker for the construction of the gasoline service station. His answer was, that the proposal was an estimate, so that Mr. Walker would have something to show the loan company as to the cost of the building. The estimate did not cover anything but the service station. Garrett said: "I proposed to build a filling station according to plans and specifications less painting. * * * Now that was the proposal that was made, but he never did accept the proposal and he didn't sign the contract." Garrett stated that there was never any agreement between him and Walker on that proposal. The proposal or estimate was given to Walker, "so he could get his money from the loan company." Garrett stated that he had the plans for the filling station drawn up. The plans specified

concrete blocks, but the plans were changed later, and bricks were used instead of concrete blocks. Garrett did not know whether the proposal which he had made enabled Walker to get his loan from the First Federal Savings and Loan Company or not, but no change was ever made in his arrangement with Walker about the cost-plus-a-percentage plan of payment for the work done.

Garrett testified that all of the materials listed in the exhibits attached to his declaration went into the Walker job, and that the prices paid for those materials were the best prices obtainable for the kinds of materials used. He stated that the wages paid to the workmen were the prevailing wages paid for work of that kind in the vicinity where the work was done. He stated that the total cost of the materials used was $6,178.35; that the total cost of labor was $3,945.63; and that his ten per cent commission amounted to $1,012.39, making a total of $11,136.37. Garrett stated that only $5,497.73 of that total amount had been paid to him. Garrett stated that he was not a contractor on the electrical and painting work which Walker had done; that he had nothing to do with the drilling of the water well, which was drilled by C. P. Clark; that he was not responsible in any way for lumber ordered from the Gatlin Lumber Company; and that no charges for the electrical work, the water well work, or the lumber which had been procured from Gatlin Lumber Company, appeared on his accounts for labor and materials. Garrett stated that Mr. Walker was in and around the buildings while the work was being done, from January through September; that he knew what was going on at all times; and that he designated the work that he wanted done.

On cross-examination Garrett again stated that his contract with Mr. Walker was not a written contract, but a verbal cost-plus contract. He was asked where the contract was made. His answer was, "I suppose in his cafe." He stated that he and Mr. Walker discussed

the matter at different times; that he had worked for Mr. Walker before; and that Mr. Walker would just say, "Go to work." Garrett was asked, "Did Mr. Walker agree specifically with you that you were to furnish all of the materials and all of the labor and he would pay you the cost of all that plus ten per cent?" His answer was, "He did. * * * He said, 'I will pay you for your trouble.'" Garrett was asked, "Where is that written proposal you made of $8,890?" His answer was, "Mr. Walker has it I assume. I gave it to him." Garrett stated that Mr. Walker never gave him any plans at all, and the writing which he gave Mr. Walker was not a contract; it was a proposal which Garrett had drawn up himself.

Only two other witnesses testified for the plaintiff during the hearing. B. L. Blackledge testified that he was an electrical contractor in the City of Laurel, doing business under the trade name of City Electric Company, and that he furnished and installed electric wiring and fixtures for D. P. Walker in a building which was to be used as a restaurant and a building which was to be used as a gasoline service station at Walker Truck Stop on U. S. Highway No. 11, in 1953; that Mr. Walker asked him what it was going to cost to have the work done, and he told him roughly what the cost would be; and that Mr. Walker authorized him to do the work and paid him for it. Blackledge stated that he had no understanding or agreement with Mr. Garrett about doing the electrical work. G. L. Rowan testified that he worked for the City Electric Company and that he did the electrical work for Mr. Walker at the Walker Truck Stop in 1953.

At the conclusion of the testimony offered on behalf of the plaintiff, the attorney for the defendants D. P. Walker and Mrs. Bonnie Walker, moved the court to peremptorily instruct the jury to return a verdict for the defendants, for the following reasons: (1) That there was no testimony in the record establishing a cost-plus-

percentage contract, as alleged in the plaintiff's declaration; and (2) that the plaintiff had wholly failed to sustain the allegations of the declaration or to make out any case whatsoever against the defendants. The court sustained the defendants' motion for a directed verdict and entered a judgment dismissing with prejudice the plaintiff's suit as against the defendants D. P. Walker, Bonnie Walker and First Federal Savings and Loan Association, and adjudging that the several intervenors do have and recover from the plaintiff the amounts sued for in their petitions for intervention. From that judgment the plaintiff has prosecuted this appeal.

Only one point is assigned and argued by the appellant's attorney as ground for reversal of the judgment of the lower court, and that is that the court erred in sustaining the motion of the appellees for a directed verdict, and in dismissing the appellant's suit.

We think the court erred in sustaining the motion of the appellees for a directed verdict at the conclusion of the testimony offered on behalf of the appellant, and in dismissing the appellant's suit without submission of the case to the jury.

■■ ■ The rules of law controlling "cost-plus" contracts are well established. Such contracts for construction work are extensively used in commercial and private practice. See Annotations 2 A.L.R. 126; 27 A.L.R. 48; 28 A.L.R. 867; and cases cited. Such contracts have been recognized by this Court. See Shaw v. Bula Cannon Shops, Inc. (1949), 205 Miss. 458, 38 So. 2d 916. Under a "cost-plus" contract the contractor is entitled to recover his costs plus the agreed percentage. 9 Am. Jur. 15, Building and Construction Contracts, par. 20.

The testimony of the plaintiff in this case, if believed, was sufficient in our opinion to support the allegations contained in the plaintiff's declaration. It was neither contradicted nor discredited by the testimony of other witnesses. It was not inherently improbable or un-

trustworthy, or so vague and indefinite that it could be arbitrarily rejected, even though the plaintiff could not give the exact dates or the exact details of the various conversations which he had with the defendant Walker at the time the construction work was done.

The appellees' attorneys say in their brief, however, that the plaintiff's statement on cross-examination that Walker said, ''I will pay you for your trouble'', clearly establishes the non-existence of a contract such as the appellant relies upon. But we think there is no merit in that contention. The plaintiff's testimony must be read and considered as a whole and in the setting in which it was given, and when so read and considered we think its meaning is clear. The plaintiff's evidence clearly shows that the plaintiff constructed the service station and repaired and remodeled the cafe building, as he was directed to do by the defendant D. P. Walker, who designated the work that he wanted done. The plaintiff testified that the only agreement he had with the defendant Walker concerning payment for the work was that Walker was to pay him the costs of the materials and labor and a contractor's commission of ten per cent. The plaintiff's testimony, in the absence of proof to the contrary, was sufficient in our opinion to support a finding that a cost-plus contract existed; and the defendant's motion for a directed verdict should have been overruled. The defendants in their answer denied that a cost-plus contract existed; and the defendants alleged in their answer that the agreement which they had with the plaintiff was an agreement to pay a stipulated sum for a completed job. But that was a matter of defense; and the defendants should have been required to go forward with their proof, if they wished to offer evidence in their own behalf. The dispute as to the terms of the contract raised an issue of fact to be determined by the jury after hearing all the evidence. Wolff v. Hopkins, 145 Miss. 827, 111 So. 290; Jones v. Griffin, 157 Miss. 256, 126 So. 35.

For the reasons stated above the judgment appealed from is reversed and the cause remanded.

Reversed and remanded.

*McGehee, C.J.,* and *Lee, Arrington* and *McElroy, JJ.,* concur.